# EXHIBIT A

**FILED**

18 APR 27 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 18-2-10787-3 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| RUBY SANGHA and PREMISES LAW GROUP, PLLC, | NO. |
| Plaintiffs, | COMPLAINT FOR NEGLIGENCE, BREACH OF CONTRACT, VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT, and OTHER WRONGFUL CONDUCT |
| vs. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

Plaintiffs, RUBY SANGHA and PREMISES LAW GROUP, PLLC, by and through their

counsel, BORIS DAVIDOVSKIY, P.S., complain and allege based on the personal knowledge

regarding own acts and on information and belief regarding all other matters as follows:

## I. PARTIES

1.1      Plaintiffs: Premises Law Group, PLLC ("Premises"), is a law firm and

professional limited liability company organized under the laws of the State of Washington

and doing business in Bellevue, Washington. Ms. Ruby Sangha is an owner, operator, and

governor of Premises. Ms. Sangha is a resident of the State of Washington, County of King

COMPLAINT - 1



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR

6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

and an attorney, licensed to practice law in the State of Washington. All acts and conduct alleged here to have been performed by Ms. Sangha were performed on behalf of Premises.

1.2      Defendant Wells Fargo Bank N.A ("Wells Fargo"), is a national association chartered under the laws of the United States. A principal subsidiary of Wells Fargo & Company, Wells Fargo is a major multinational financial services provider engaged in operating banking institutions and providing financial products and services throughout the State of Washington. Wells Fargo is headquartered in Sioux Falls, South Dakota. At all relevant times, Wells Fargo and its direct and indirect subsidiaries have transacted business within and from the County of King, and throughout the State of Washington.

1.3      Whenever reference is made in this Complaint to any act or omission of a corporate defendant, such allegation shall mean that the corporation and its direct and indirect subsidiaries did the acts alleged through their officers, directors, agents, employees, or representatives while they were acting within the course and scope of their authority.

## II.      JURISDICTION AND VENUE

2.1      Jurisdiction is conferred over claims and causes of action by RCW 2.08.010.

2.2      Venue is proper in this Court under RCW 4.12.020 and RCW 4.12.025. All the actions and omissions asserted in this Complaint occurred in whole or in part in King County, Washington. Wells Fargo also transacts business in King County, Washington.

## III.      FACTS

3.1      Wells Fargo has built its banking business by cross-selling its products and encouraging its customers to maintain numerous accounts with Wells Fargo. Indeed, a centerpiece of Wells Fargo's business model is getting each customer to maintain multiple

COMPLAINT - 2

LAW OFFICE OF
**BD** BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

accounts. This business model has led Well Fargo to promote and tolerate deceptive and illegal practices harming consumers while inflating Wells Fargo's bottom line.

3.2     Wells Fargo promotes this business model system by imposing unrealistic sales quotas on its employees. Adopted policies have driven Wells Fargo's bankers to engage in improper behavior to meet those unreachable goals. Wells Fargo has known about and promoted these practices for years, including during the times relevant hereto.

1.1     In or about 2012, Ms. Sangha formed Premises, a law firm with a focus on transactional real estate work. At the time, Premises did not need a trust account because all the money coming in was earned and, therefore, deposited into Premises' operating or general business checking account, which Ms. Sangha had opened with Wells Fargo.

1.2     In early 2014, Ms. Sangha had an opportunity to grow Premises and to begin operating as an escrow firm, increasing her income. As an escrow firm, Premises would be required to maintain an Interest on Lawyers Trust Account ("IOLTA") because Premises would not be depositing or otherwise handling funds belonging to others.

1.3     In or about March 2014, Ms. Sangha consulted with a Wells Fargo representative regarding opening an IOLTA account with Wells Fargo. The Wells Fargo representative expressly solicited Ms. Sangha's business and insisted that, in addition to the IOLTA account, Ms. Sangha also open "escrow" checking and savings accounts.

1.4     Relying on Wells Fargo's advertisements, solicitations, and express representations regarding what she needed and that she had nothing to worry about because she would be fully taken care of, Ms. Sangha proceeded forward.

1.5     Regarding the IOLTA account specifically, Ms. Sangha explained to the Wells Fargo representative the Washington State Bar Association's ("WSBA's") specific

COMPLAINT - 3

B D — LAW OFFICE OF —
BORIS DAVIDOVSKIY, P.S.
— ATTORNEY & COUNSELOR —
6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

requirements, including that the trust account had to be (a) an IOLTA account and (b) set up using the Tax ID number of the Legal Foundation of Washington. In addition, Wells Fargo had to remit the interest earned on the IOLTA account through a remittance report monthly. And, Wells Fargo could charge no fees to the IOLTA account because the funds deposited into an IOLTA account did not belong to the attorney, here, Premises.

1.6     Ms. Sangha further explained to the Wells Fargo representative that Wells Fargo's failure to comply with the requirements of IOLTA accounts would render her incompliant with the WSBA's ethics rules and expose her to potential liability to those whose funds are deposited into Premises' trust account, among other things.

1.7     To make sure that Wells Fargo correctly set up Premises' IOLTA account, Ms. Sangha even provided a name of another attorney who operated an escrow law firm and also maintained an IOLTA account with Wells Fargo, informing Wells Fargo that she wanted her to account to be set up just like the attorney's. Having looked up this account, the Wells Fargo representative confirmed that Wells Fargo would do so.

1.8     On or about March 10, 2014, the representative emailed Ms. Sangha, confirming that the representative would be setting up specifically an IOLTA account and scheduling a time for Ms. Sangha to come in to complete the paperwork.

1.9     On April 8, 2014, Ms. Sangha provided additional written instructions to Wells Fargo regarding how the IOLTA account had to be set up, further reiterating, among other things, that Premises needed specifically an IOLTA account.[1]

---

[1] A copy of the request is attached hereto as **Exhibit A**.

COMPLAINT - 4



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480    T: 425.582.5200
Mountlake Terrace, WA 98043    F: 425.582.2222

1.10    On or about April 10, 2014, the Wells Fargo representative opened what Ms. Sangha believed was an IOLTA account.

1.11    In addition, the Wells Fargo representative also opened two "escrow" accounts, a checking and a savings account.

1.12    During this process, Mr. Sangha provided to Wells Fargo Premises' Operating Agreement, along with a copy of the letter from the WSBA regarding IOLTA accounts.

1.13    Unbeknownst to Ms. Sangha, instead of an IOLTA account, the Wells Fargo opened a Real Estate Trust Fund ("RITA") account.

1.14    Further, unbeknownst to Ms. Sangha—and contrary to Well Fargo's express representations—Ms. Sangha was not required, nor did she need, to open any additional "escrow" checking or savings accounts. Instead, Premises could continue to use the already existing operating or general business checking account for all other deposits not required to be deposited into the trust account.

1.15    Once Wells Fargo informed Ms. Sangha that her "IOLTA" account had been fully set up as instructed—which later turned out to be false—Premises began its high-volume escrow services.

1.16    It was not until April 29, 2015, that Ms. Sangha was shocked to have discovered that Wells Fargo had open a RITA account instead of an IOLTA account.

1.17    By this time, Premises had been operating as a high-volume escrow firm with numerous transactions in what Ms. Sangha now knew was a RITA, not an IOLTA, account.

1.18    Initially, Ms. Sangha had noticed that Wells Fargo had been wrongfully taking its fees out of what Ms. Sangha believed was an IOLTA trust account.

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480    T: 425.582.5200
Mountlake Terrace, WA 98043    F: 425.582.2222

1.19     Ms. Sangha had also noticed that other law firms' earnest money checks clearly stated "IOLTA" while Premises' checks did not.

1.20     Ms. Sangha immediately contacted Wells Fargo, at which point Wells Fargo—to her extreme shock and surprise—informed her that Premises never had an IOLTA account.

1.21     Wells Fargo also informed Ms. Sangha that Premises' documents she had provided when the account was opened had never been scanned into Wells Fargo's system, causing further frustration and aggravation on Ms. Sangha's part.

1.22     Making matters worse, while Wells Fargo was trying to remedy the problem by setting up a true IOLTA account for Premises, Ms. Sangha was shocked to have received the following email:

> "My name is Luis and I am assisting Rowena with this account opening. Will we be opening a RETA or IOLTA?"[2]

1.23     It was clear to Ms. Sangha that Wells Fargo—contrary to its advertisement and express representations and promises—did not know what it was doing at the time.

1.24     Further, on or about May 11, 2015, the true IOLTA account had not yet been set up. Ms. Sangha was forced to, again, contact Wells Fargo to reiterate the urgency, including that Wells Fargo was causing her to sustain further damages and incur more fees as a result of Wells Fargo's failure to timely and properly correct the error.

1.25     As part of setting up the true IOLTA account, Wells Fargo sent disclosures and new account forms to Premises for Ms. Sangha's review and signature. Ms. Sangha was

---

[2] A copy of this email is attached hereto as **Exhibit B**.

COMPLAINT - 6

LAW OFFICE OF
**BORIS DAVIDOVSKIY, P.S.**
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

further shocked to have discovered that those forms were RITA forms applicable to RITA accounts only, not IOLTA forms applicable to IOLTA accounts.

1.26    Although Wells Fargo ultimately managed to open an IOLTA account for Premises, Ms. Sangha was, again, shocked when she discovered that Wells Fargo continued to improperly charge its fees to the trust account.

1.27    When confronted, Wells Fargo admitted knowing that the trust account was not to be service-charged but, nonetheless, stated that Wells Fargo would continue to charge fees to the trust account until the account that had been improperly set up was closed, even though Wells Fargo knew that the funds remaining in the improperly set up trust account did not belong to Premises and, thus, could not have been used to pay for Wells Fargo's fees.

1.28    Escrow involves multiple transactions occurring per file both disbursements and deposits. Each deposit and disbursement from a trust account corresponds to a client's file number, each client file opened will begin with '0' and will file once closed will end at '0'; hence, each line item on the account bank statement is accounted for.

1.29    Before the error, all client files originated and closed in the designated account. After the error, because Premises now had to open another account, Premises now had two accounts, with files originating in one account, however, closing in another. Additionally, there was commingling of files where some parties to the transaction were depositing funds to the first trust account as per original instructions and other parties to the same transaction were depositing in the new correctly designated IOLTA account.

1.30    Furthermore, by applying or charging improper fees, Wells Fargo created and further exacerbated problems involving Premises' inability to account for the fees that did not pertain to a specific file and account for charges, reversals and credits.

COMPLAINT - 7



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480    T: 425.582.5200
Mountlake Terrace, WA 98043    F: 425.582.2222

1.31     Premises' reconciliations were deeply strained due to now having two trust accounts and incorrect fees having been applied along with a volume of deposits coming in with balance reaching more than $1,000,000. Premises' book balance, trial balance and 3-way reconciliation records were severely impacted in this accounting nightmare.

1.32     Premises immediately retained a reconciliation firm to mitigate Premises' damages and to reconcile the two accounts.

1.33     Indeed, notwithstanding its repeated failures, Wells Fargo had declined to provide reconciliation services to Premises to address the issues with the two accounts.

1.34     This reconciliation process put a tremendous strain on Premises' high-volume escrow business such that Premises could no longer perform escrow services until all the reconciliation issues were resolved.

1.35     Although Wells Fargo initially denied any liability, Wells Fargo ultimately admitted that, although Ms. Sangha had specifically asked for an IOLTA account, a RETA account was chosen due to Wells Fargo's error, which was uncovered on April 29, 2015.[3]

1.36     On information and belief, the representative initially assisting Ms. Sangha with opening of the accounts in question was not qualified to do so. Ms. Sangha later learned the representative was a personal, and not a business, banker. In fact, Wells Fargo expressly admitted that the representative who initially opened the accounts in question was not qualified to do so and that a business banker should have assisted Ms. Sangha.

1.37     The personal banker ran the transaction of opening of the account under her associate's ID who is a business banker, but that individual was never involved in the transaction, nor overseeing the process or providing any advice, assistance or knowledge.

---

[3] A copy of Wells Fargo's letters admitting liability are enclosed hereto as **Exhibit C**.

COMPLAINT - 8

**BD**
LAW OFFICE OF
**BORIS DAVIDOVSKIY, P.S.**
ATTORNEY & COUNSELOR

6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

1.38     On information and belief, at the relevant times, Well Fargo had centralized functions where business matters, including trust matters, were handled by business representatives that were qualified or otherwise competent to do certain tasks, such as open IOLTA accounts, that personal bankers were not sufficiently qualified to do.

1.39     On information and belief, Premises' accounts in questions were not handled by the appropriate representative due to the pressures Wells Fargo would put on its bankers to open numerous accounts per customers and the strict quotas Wells Fargo would institute regulating the number of new accounts its bankers had to open.

1.40     Indeed, on information and belief, Wells Fargo bankers were under intense pressure to meet those quotas. If they failed to do so, their managers would hound, berate, demean, and threaten them with, *inter alia*, termination. And, Wells Fargo bankers or employees who did not reach their quotas were often required to work hours beyond their typical work schedule and without being compensated for that extra work time.

1.41     On information and belief, Wells Fargo employees were threatened or embarrassed during meetings if they did not meet the previous day's quota. And, since those quotas were often unattainable as there were not enough customers entering a branch daily for employees to meet their quotas through traditional means, Wells Fargo's representatives were, therefore, forced to resort to alternative means to meet quotas, including using high pressure sales tactics to, as here, deceive or coerce customers into opening additional accounts or failing to allow a proper banker to handle the transaction.

1.42     On information and belief, in addition to deceiving Ms. Sangha into opening "escrow" accounts she did not need or ask for, Wells Fargo's representative failed to assign

COMPLAINT - 9

BD

——— L A W   O F F I C E   O F ———
BORIS DAVIDOVSKIY, P.S.
——— ATTORNEY & COUNSELOR ———
6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

or transfer the opening of Premises' IOLTA account to the appropriate banker for fear of not meeting her quota.

1.43     Before Wells Fargo's error was uncovered, Premises was making about $35,000-$40,000 each month. As a direct and proximate consequence of Wells Fargo's actions or omissions, Premises lost several months' worth of income in part because Premises could perform no escrow services during the period of reconciliation.

1.44     Additionally, as a direct and proximatele consequence of Wells Fargo's actions or omissions, Ms. Sangha of Premises has (1) incurred thousands of dollars in reconciliation fees; (2) lost thousands of dollars in attorney's fees in having to deal with Wells Fargo's actions or omissions; (3) lost clients; (4) lost time; (5) suffered embarrassment and humiliation; (6) suffered aggravation and frustration; (7) suffered anxiety; (8) suffered unease; (9) suffered emotional distress, including from unfair and deceptive nature of Wells Fargo's business practices; and (10) incurred expenses, including in seeking and retaining counsel.

## II.   FIRST CAUSE OF ACTION: BREACH OF CONTRACT AND THE DUTY OF GOOD FAITH AND FAIR DEALING

2.1     Plaintiffs re-allege the foregoing allegations and incorporate these allegations by reference as if fully set forth herein.

2.2     The relationship between Plaintiffs and Wells Fargo constituted an enforceable contract. In exchange for Plaintiffs' payments and other business, Wells Fargo agreed to open an IOLTA account for Plaintiffs.

COMPLAINT - 10

**BD**   ─LAW OFFICE OF─
**BORIS DAVIDOVSKIY, P.S.**
─ATTORNEY & COUNSELOR─
6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

2.3     Under Washington law, every contract is subject to an implied duty of good faith and fair dealing.[4] This duty obligates the parties to a contract to cooperate with each other so that each party may benefit from full performance.[5]

2.4     To identify whether a breach of the duty of good faith and fair dealing has occurred, Washington courts have looked to a party's justified expectations under the contract. "The duty of good faith requires 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'"[6]

2.5     Plaintiffs have performed all the conditions, covenants, promises, and agreements required of them under the terms of the contract regarding the IOLTA account, or all conditions precedent have otherwise occurred or been waived.

2.6     Wells Fargo failed and neglected to perform its part of the contract or to tender such performance. Wells Fargo's above-described deceptive, unfair, or otherwise improper conduct also violated Wells Fargo's contractual duties of good faith to Plaintiffs.

2.7     As a direct consequence of Well Fargo's breach, Plaintiffs have been substantially damaged and continue to be damaged in an amount to be proven at trial, no part of which has been paid.

## III.     SECOND CAUSE OF ACTION: NEGLIGENT HIRING AND SUPERVISION

3.1     Plaintiffs re-allege the foregoing allegations and incorporate these allegations by reference as if fully set forth herein.

---

[4] *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112 (2014).
[5] *Id.*
[6] *Edmonson v. Popchoi*, 172 Wn.2d 272, 280 (2011) (citing RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a (1981)); *see id.* cmt. d ("[B]ad faith may be overt or may consist of inaction.").

COMPLAINT - 11

LAW OFFICE OF
**BORIS DAVIDOVSKIY, P.S.**
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043    F: 425.582.2222

3.2     At all times material hereto, Wells Fargo's agents, officers, and employees, including those directly or indirectly responsible for the accounts in question were under Wells Fargo's direct, supervision, and control.

3.3     Wells Fargo further assumed this duty by holding its officers, agents, and employees out to the public as competent representatives in their given capacities.

3.4     Wells Fargo also had a duty to exercise reasonable care with the accounts it opened and serviced.

3.5     Wells Fargo breached these duties.

3.6     On information and belief, Wells Fargo negligently retained, controlled, trained, and supervised its agents and employees when Wells Fargo knew or should have known they acted or would act in the ways described herein.

3.7     On information and belief, Wells Fargo negligently retained, controlled, trained, and supervised its agents and employees so they committed the wrongful acts complained of herein against Plaintiffs and other members of the public.

3.8     On information and belief, Wells Fargo failed to properly control and supervise them to ensure they would properly open bank accounts, including Plaintiffs'.

3.9     Wells Fargo also failed to hire and supervise competent, experienced, personnel to open or otherwise handle bank accounts with Wells Fargo.

3.10    It was foreseeable to Wells Fargo its agents and employees would engage in the acts complained of herein. Despite this knowledge, Wells Fargo failed to exercise reasonable care to supervise or control its agents and employees.

COMPLAINT - 12

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

3.11    On information and belief, Wells Fargo engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its agents and employees.

3.12    As a direct and proximate result of Wells Fargo's negligent hiring, control, retention, and supervision, Plaintiffs have suffered substantial damages in an amount to be proven at trial.

## IV.    THIRD CAUSE OF ACTION: MISREPRESENTATION

4.1    Plaintiffs re-allege the foregoing allegations and incorporate these allegations by reference as if fully set forth herein.

4.2    In performing or failing to perform the acts alleged herein, Wells Fargo has negligently and/or intentionally made material misrepresentations of fact regarding the accounts in question, including that Plaintiffs were required to open additional "escrow" accounts.

4.3    Plaintiffs relied on those representations to their detriment.

4.4    As a direct and proximate cause of Wells Fargo's misrepresentations, Plaintiffs have been substantially damaged in an amount to be proven at trial.

## V.    FOURTH CAUSE OF ACTION: VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT

5.1    Plaintiffs re-allege the foregoing allegations and incorporate these allegations by reference as if fully set forth herein.

5.2    Under the Washington Consumer Protection Act, RCW 19.86 *et seq*. ("CPA"), "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. To prevail in a private claim under the Act, a plaintiff must establish five elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest

COMPLAINT - 13

impact; (4) injury to plaintiff in his or her business or property; and (5) causation.[7] To show that a party has engaged in an unfair or deceptive act or practice, the plaintiff "need not show that the act in question was *intended* to deceive, but that the alleged act had the *capacity* to deceive a substantial portion of the public."[8]

5.3     Even minimal or nominal damages constitute "injury" under the CPA.[9] In fact, no monetary damages need be proven and that non-quantifiable injuries, such as loss of goodwill would suffice.[10]

5.4     Wells Fargo violated the CPA.

5.5     Wells Fargo's actions or omissions, as described here, constitute unlawful, deceptive, and unfair business acts within the meaning of the CPA.

5.6     Additionally, on information and belief, Wells Fargo knowingly concealed and failed to disclose materials facts with the intent that Plaintiffs rely upon such concealment and nondisclosure, and Plaintiffs did reasonably and justifiably rely on Wells Fargo's statements and/or omissions.

5.7     Wells Fargo's wrongdoings occurred in the course of the business.

5.8     Wells Fargo's business practices alleged in this Complaint had the capacity to affect members of the public and presented a threat to Plaintiffs and other members of the public. Thus, additional plaintiffs may have been injured in the same manner as Plaintiffs.

5.9     As a direct result of Wells Fargo's conduct, Plaintiffs have been substantially harmed and continue to be harmed.

---

[7] *Hangman Ridge Training Stables, Inc v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).
[8] *Id.* at 785 (citing *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 87 Wn.2d 298 (1976)).
[9] *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 57 (2009).
[10] *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740 (1987).

COMPLAINT - 14

LAW OFFICE OF
**BORIS DAVIDOVSKIY, P.S.**
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

5.10    Plaintiffs are entitled to judgment against Wells Fargo for damages sustained as a result of its unfair and deceptive acts and practices, including treble damages, other punitive damages to the extent permitted by law, and attorney fees and costs.

## VI.    FIFTH CAUSE OF ACTION: NEGLIGENCE

6.1    Plaintiffs re-allege the foregoing allegations and incorporate these allegations by reference as if fully set forth herein.

6.2    Wells Fargo owed Plaintiffs duties of, *inter alia*, care in the handling and service of the accounts and transactions in question, including independent of Wells Fargo's contractual duties and obligations.

6.3    Wells Fargo breached the duties owed to Plaintiffs.

6.4    As a direct and proximate consequence of Wells Fargo's negligence, Plaintiffs have been substantially damaged and continue to be damaged in an amount to be proven at trial, no part of which has been paid.

## VII.    SIXTH CAUSE OF ACTION: EMOTIONAL DISTRESS

7.1    Plaintiffs re-allege the foregoing allegations and incorporate these allegations by reference as if fully set forth herein.

7.2    Wells Fargo had duties to Plaintiffs.

7.3    Wells Fargo could foresee that its actions would harm Plaintiffs.

7.4    Wells Fargo breached its duties to Plaintiffs.

7.5    Wells Fargo made false material misrepresentations or omissions regarding its products and services; failed to take proper care with the handling and servicing of the accounts in question; and failed to protect Plaintiffs from being exposed to the above-described unreasonable risks and damages.

COMPLAINT - 15

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

7.6     Wells Fargo harassed Plaintiffs by engaging in the above-described actions, including by repeatedly engaging in the exact same improper conduct, causing Plaintiffs to incur substantial losses.

7.7     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered emotional distress, and Wells Fargo's reckless disregard for Plaintiffs' property has impacted Plaintiffs' health and overall well-being.

## VIII.     SEVENTH CAUSE OF ACTION: INJUNCTIVE RELIEF

8.1     Plaintiffs re-allege the foregoing allegations and incorporate these allegations by reference as if fully set forth herein.

8.2     A plaintiff may seek injunctive relief for violations of the CPA.[11]

8.3     Plaintiffs seek an Order enjoining Wells Fargo from its practices in the unlawful manner described above.[12]

8.4     Plaintiffs also seek an Order enjoining Wells Fargo from the above-described unlawful activities under the CPA.

8.5     Plaintiffs have reason to believe these actions make up a pattern and practice of behavior and have affected other individuals similarly situated.

8.6     Injunctive relief is necessary to prevent further injury to Plaintiffs and to the general public.

8.7     Accordingly, the Court should issue the requested injunctive relief.

## IX.     VIOLATION OF BANKING LAWS

9.1     Plaintiffs re-allege the foregoing allegations and incorporate these allegations by reference as if fully set forth herein.

---

[11] RCW 19.86.090.
[12] *Scott v. Cingular Wireless*, 160 Wn.2d 843, 853 (2007).
COMPLAINT - 16



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

9.2     Wells Fargo's actions constitute a violation of federal law governing accounts.

9.3     As a direct and proximate consequence of Wells Fargo's violations, Plaintiffs have been substantially damaged and continue to be damaged in an amount to be proven at trial, no part of which has been paid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. Judgment against Wells Fargo for compensatory damages in an amount to be proven at trial, with interest at the legal rate on such amount awarded as allowed by law;

2. Award of reasonable attorney fees and reimbursement of all costs for the prosecution of this action under the Washington Consumer Protection Act and other theories and statutes in the amount to be proven at trial;

3. Treble damages under RCW 19.86;

4. Assessment of civil penalties under RCW 19.86;

5. Restitution;

6. Punitive damages, as applicable;

7. Pre-judgment and post-judgment interest on the entire judgment at the highest rate allowable by law; and

8. Such other and further relief as the Court deems just and proper.

9. Plaintiffs expressly reserve their right to amend their Complaint to allege additional causes of action as discovery permits.

//

//

//

COMPLAINT - 17



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

DATED this 26th day of April, 2018.

**BORIS DAVIDOVSKIY, P.S.**

Boris Davidovskiy, WSBA #50593
6100 219th St SW, Suite 480
Mountlake Terrace, WA 98043
Email: boris@davidovskiylaw.com
Attorney for Plaintiffs

COMPLAINT - 18

# EXHIBIT A

Please complete form and give to your financial institution.

## REQUEST TO ESTABLISH IOLTA ACCOUNT

TO [Institution]:                    Date: _April 8th/14_

_Wells fargo - Medina_
_Attention: Cecilia chen_

FROM [Lawyer/Firm]:

_Ruby Sangha_

The lawyer/law firm listed above handles client money and is therefore requesting to open an IOLTA (Interest on Lawyers' Trust Accounts) account with your financial institution. The proper handling of client money is governed by RPC 1.15A – Safeguarding Property. The interest earned on IOLTA accounts is remitted to the Legal Foundation of Washington (LFW).

You must utilize the Foundation's tax identification number on IOLTA accounts. That number is ███████ Because the Legal Foundation of Washington, the beneficiary of the interest on IOLTA accounts, is a section 501(c)(3) charitable organization, IRS form 1099 should not be completed for IOLTA accounts. .

Inquiries may be directed to the Legal Foundation of Washington, IOLTA Manager, Linda Graham at (206) 957-6282.

**Comment 15 to RPC 1.15A expressly forbids the use of earnings credits on IOLTA accounts: "A lawyer may not receive from financial institutions earnings credits or any other benefit from the financial institution based on the balance maintained in a trust account."**

Thank you for your prompt attention to this request. Your cooperation and support for this important program is greatly appreciated.

Sincerely yours,

Lawyer/Law Firm

_Contact: claronera@wellsfargo.com_
_-set up CEO System *_

# EXHIBIT B

From: Luis.Ruvalcaba@wellsfargo.com
Subject: RETA
Date: April 29, 2015 at 2:38 PM
To: Tara@premiseslaw.com
Cc: daconero@wellsfargo.com



Hello Tara,

My name is Luis and I am assisting Rowena with this account opening. Will we be opening a RETA or IOLTA? Does there need to be a For Benefit Of client on the account? Will Premises Law be the tax responsible customer?

Thank you.

Luis Ruvalcaba
Business Associate
East King County Business Banking
Wells Fargo Business Banking l 205 108th Ave NE, Suite 200l Bellevue, WA 98004
MAC P6478-022
Tel 425-450-8058 l Fax 425-450-8071/ENTERPRISE FAX 866-964-0130
Luis.Ruvalcaba@wellsfargo.com

This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation.

# EXHIBIT C



**Bellevue Medina Office**
1130 Bellevue Way NE
Bellevue, WA 98004

Tel:  425 462 5543
Fax:  425 462 6530
www.wellsfargo.com

September 20, 2017

Regarding Customer:

PREMISES LAW GROUP, PLLC
2704 107TH AVE NE
BELLEVUE WA 98004-2034
UNITED STATES

To Whom It May Concern:

This letter is verification that the business customer named above has an established account with Wells Fargo Bank.  This checking account number xxxxxx5257 was open 04/10/14. During the opening process, the business customer mentioned in correspondences that an IOLTA account was required however, a RETA relationship was chosen by mistake. As a result, the account was setup as a RETA based on bank error and did not convert into IOLTA until 04/29/15 when this was uncovered.

If you need deposit information, refer to the customer named above.  The account holder can provide deposit information from their monthly statements.

Please call the Wells Fargo Customer Service location at 1-800-869-3557 (1-800-TO-WELLS) if you have any questions.  We hope that this information is useful.

Sincerely,

Francis Fong
Branch Manager
425-462-5542

Together we'll go far





**WELLS FARGO**

**East King County**
**Business Banking Group**
MAC P6478-022
205 108th Ave NE Suite 200
Bellevue, WA 98004
425 450-8122

Wells Fargo Bank, N.A.

April 30, 2015

PREMISES LAW GROUP, PLLC
RUBY SANGHA
2704 107TH AVE NE
BELLEVUE WA 98004-2034

RE:  WA – RETA account number XXXXX95257

This letter is to address an error in account opening.  Premises Law Group, PLLC requested an account to be opened at the Wells Fargo branch in Medina, WA in April, 2014. The request was to open an IOLTA account and documentation was provided during account opening.  However, the account was opened as a WA – RETA account under Premises Law Group's EIN, which was not the request of the client. This error was not noticed until a recent audit completed by Ruby Sangha, owner and attorney of Premises Law Group, on April 29, 2015.

Ruby immediately informed Wells Fargo Bank of her findings. To resolve the issue, a new account has been opened, WA – IOLTA account number XXXXX10045, to replace the existing account that was opened incorrectly. The new account structure will be identical to the existing account, other than it will be correctly designated an IOLTA account, bearing the WSBA EIN. Any applicable account analysis fees will be billed to the designated billing account; avoiding direct debits from the IOLTA account as required. Premises Law Group, PLLC will phase out the existing account and have it closed when all transactions have posted.

Please do not hesitate to contact me at (425) 450-8083 with any questions or concerns.

Sincerely,

Rowena B. Dacones
Vice President
Sr. Business Relationship Manager
East King County Business Banking Group